FILED
SUPERIOR COURT
OF GUAM

202' FEB 16 PM 3: 56

CLERK OF COURT

BY:

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| MORGAN AIKEN, III,<br><br>Plaintiff,<br><br>vs.<br><br>CATHERINE M.R. CASTRO and EDWARD CASTRO,<br><br>Defendants. | Superior Court Case No. **CV0084-19**<br><br>**DECISION AND ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

The Court here considers Defendants Catherine M.R. Castro and Edward Castro's (the "Castros") Motion for Summary Judgment. Upon reviewing the pleadings, evidence, and relevant law, the Court GRANTS in part and DENIES in part the Castros' Motion for Summary Judgment on Plaintiff Morgan Aiken III's claims for breach of contract.

## I. PROCEDURAL BACKGROUND

Aiken has sued the Castros for breach of contract and breach of the implied covenant of quiet enjoyment.[1] Compl. (Jan. 25, 2019). For his breach of contract claim, Aiken argues that the Castros breached three material terms of the Lease: (1) they failed to deliver the leased premises in its entirety; (2) they failed to provide essential services; and (3) they prevented Aiken from using the property for his intended purposes.

The Castros move for summary judgment on Aiken's claims for breach of contract and damages. Specifically, the Castros claim that Aiken has failed to present any probative evidence substantiating his allegations of the Castros' breach or for any of his claims for damages. In

---

[1] The caption on Aiken's Complaint indicated that his causes of action were breach of contract and harassment; however, the allegations contained within the Complaint indicate that he is pursuing a claim for breach of implied covenant of quiet enjoyment.

opposition, Aiken argues that the pleadings and photographic evidence demonstrate an issue of material fact. Pl. Oppose Defendants' Motion for Summary Judgment (Revision) (Dec. 7, 2020) ("Pl. Opp No. 1").

## II.    DISPUTED AND UNDISPUTED FACTS

In November 2018, the Castros leased Aiken a property located at 230 Roy T Damian Jr. Street, MongMong-Toto-Maite (the "Premises"). The parties executed a Residential Lease Agreement (the "Lease"). Aiken signed the Lease on November 19, 2018; the Castros signed it on November 23, 2018. Compl., Ex. 1. The Lease commenced on November 24, 2018 (the "Commencement Date") and was scheduled to terminate on November 22, 2020. *Id.* at 3. On November 24, 2018, Aiken took possession of the Premises.

Several provisions of the Lease are relevant to the Castros' Motion:

- Paragraph 8 indicated that "Except for Tenant's personal property, contained entirely within the Premises, storage is not permitted on the Premises."

- Under Paragraph 11, the Castros were responsible for yard maintenance.

- Paragraph 13 permitted Aiken to keep two twenty-pound outside dogs on the Premises, and Addendum No. 2 required that the dogs be kept outside and leashed at all times.

- Paragraph 25 indicated that if the landlord cannot deliver the Premises within five days of the Commencement Date, the tenant may terminate the lease by providing written notice to the landlord and returning the keys.

- Addendum No. 1 contained an "as is" clause indicating that, due to Aiken's request for immediate occupancy, he agreed to accept the Premises "as is." *Id.*

- Addendum No. 1 also contained a clause requiring the landlord to maintain and

repair the air conditioners.

- Under Addendum No. 2, the Castros retained the right to a parking space on the Premises and use of the storage facility behind the home.

Compl., Ex. 1.

Within a couple of weeks of executing the Lease, or as early as December 2018, the parties' landlord-tenant relationship began to deteriorate. Pl. Opp No. 1 at 2. On December 15, 2018, the Castros advised Aiken of his non-compliance with various terms of the lease. Def. Mot. Summ. J. at 2.[2] Unable to reconcile the issues, the Castros filed a Verified Complaint for Unlawful Detainer[3] and obtained an Order for Aiken to vacate the Premises no later than April 15, 2019. *Castro*, CV0244-19 (J. (Mar. 21, 2019)).[4] Aiken vacated the Premises on April 15, 2019.

Aiken took various photographs of the Premises over the course of his tenancy. Def. Submissions of Exhibits and Letter at Ex. 1. *See also* Def. Submissions Resp. to Sched. Notice (Additional Information) (Jan. 6, 2020). "Exhibit 1" contains eight photos, taken in late December 2018, depicting the Castros' continued use of the property after the lease agreement was signed. Photos one, two, and three show what appear to be debris such as carpet and furniture taken from the house and piled in two areas on the Premises; photo four depicts a black Toyota SUV; photos five, six, seven, and eight depict a garden house, ladder, wood, and plastic piping piled next to a portion of the house and along a fence. "Exhibit 2," taken on December

---

[2] The Castros did not provide affidavits or declarations in support of their Motion, thus, this statement as to when the Castros notified Aiken of a breach is unsupported here. However, the Court notes that a Declaration containing this information was filed in *Castro v. Aiken*, CV0244-19 (Decl. Catherine M.R. Castro (Mar. 11, 2019)).

[3] On March 1, 2019, the Castros served Aiken with a five-day Notice to Cure Defect or Vacate Premises. Def. Mot. Summ. J. at 2.

[4] In that unlawful detainer Judgment, the Court found that the parties entered into a valid lease agreement and that Aiken violated several material terms of the lease.

18, 2019, is a photo of what Aiken describes as environmental pollution on the Premises.

"Exhibit 5" contains two photos taken on March 19, 2019, of two gas tanks stored on the

Premises. "Exhibit 6" includes four photos of trash that Aiken claims that the Castros placed in

the yard of the Premises. One photo is of a pile of palm branches and two photos depict a small

container. No date is provided for these photos in "Exhibit 6."

### III.  LAW AND DISCUSSION

Under Guam Rule of Civil Procedure 56(c), summary judgment is proper "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Summary judgment is proper only where

there is no genuine "dispute as to any material fact." GRCP 56(c). The "materiality" of

particular facts is determined by the pleadings and the substantive law. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In responding to a motion for summary judgment, an adverse party may not rest upon

mere allegations or denials of the adverse party's pleading. GRCP 56(e). Instead, the

non-movant, by affidavits or otherwise, "must set forth specific facts showing that there is a

genuine issue for trial. If the adverse party does not so respond, summary judgment, if

appropriate, shall be entered against the adverse party." GRCP 56(e).

In this particular case, Aiken is self-represented. In Guam, the filings of pro se litigants

are given considerable, lenient treatment in the aim of giving the parties every fair opportunity to

present their cases. *Allen v. Richardson*, 2020 Guam 13 ¶ 8. Lenient treatment includes liberally

construing their filings. *Ji v. Toves*, 2020 Guam 2 ¶ 13. Under these standards, although Aiken

did not provide any affidavits or authenticate his filings, his signature on such documents will

suffice as serving to authenticate his statements.

Moving to the merits of the motion, to establish a breach of contract, a plaintiff must prove (1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damages to the plaintiff. *Hemlani v. Hemlani*, 2015 Guam 16 ¶ 19 (citing *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010)). Thus, under a breach of contract theory for a lease dispute, Aiken must establish: (1) the existence of a valid contract--the Lease;[5] (2) his performance under the Lease; (3) the Castros' breach; and (4) resulting damages. In his Complaint Aiken argues that the Castros breached the Lease in three ways: (1) they failed to deliver the Premises in its entirety; (2) they failed to provide essential services; and (3) they prevented Aiken from using the property for which he rented it for. The Court addresses each in turn.

## A. Delivery of Possession of the Premises in its Entirety

On his claim concerning delivery, Aiken points to Paragraph 1(B) and argues that "sole use" of the Premises means to the complete exclusion of the Landlord's personal property. Reply to Def's Opp'n to Mot. Summ. J. (Jan. 11, 2021) ("Pl. Opp No. 2") at 9. As evidence of the Castros' continued use, Aiken points to the eight photos submitted as "Exhibit 1." Def. Submissions of Exhibits and Letter at Ex. 1. The Court finds that the evidence does not create a triable issue of fact on whether the Castros breached.

First, the household debris depicted in photos one, two, and three appears to be from the house that Aiken moved into and accumulated as a result of the move. Moreover, the date Aiken

---

[5] Aiken also argues that the parties never executed the Lease because the Castros did not deliver the Premises in its entirety. Considering that an element of any breach of contract claim is the existence of a contract, this assertion would be detrimental to Aiken's breach of contract claims. Nonetheless, the Court takes judicial notice of the Judgment entered in CV-0244-19, in which the Court found that the parties entered into a valid lease agreement. *Castro v. Aiken,* CV0244-19 (J.).

gave for the photos is late December 2019, which is within one month of the Commencement

Date. Since Aiken requested to move in immediately and agreed to take the property "as is," the

Castros were not required to deliver the Premises free from such debris. Second, under the

Lease the Castros retained access and use of both a storage unit and a parking space on the

Premises and were responsible for yard maintenance. Compl., Ex. 1. Photo four depicting a

black Toyota SUV and photos five, six, seven, and eight depicting a garden house, ladder, wood,

and plastic piping indicate use of the Premises by the Castros that is consistent with yard

maintenance and the right to a parking spot. Finally, under Paragraph 25, the time for Aiken to

terminate the lease due to the Castros' failure to deliver the property in its entirety would have

been within five days of the Commencement Date. *Id.* It is undisputed, however, that Aiken

failed to do this, because he took possession of the property on the Commencement Date and

remained in possession of the property until April 2019. Accordingly, based on the foregoing,

the Court finds that Aiken has not presented sufficient evidence to establish a triable issue as to

whether the Castros breached for not delivering the Premises in its entirety.

### B. Failure to Provide Essential Services

The Castros also claim that summary judgment is appropriate on Aiken's claim that the

Castros failed to provide essential services--specifically, Aiken's claim that the Castros failed to

repair a broken air conditioner. Pl. Pretrial Brief at 2. Aiken claims that one of the air

conditioners stopped working two days after he occupied the residence. Pl. Opp No. 2 at 12.

He also claims to have requested the Castros to repair it, but they failed to do so. *Id.*

Under Addendum No. 1, repair and maintenance of the air conditioner was the

responsibility of the Castros. Since the Court is construing Aiken's signature on his filings as

authenticating his statements, the Court finds that his claims that the air conditioner was broken

and that he made requests for the Castros to fix the air conditioner are sufficient evidence to create an issue of material fact. Accordingly, summary judgment is not appropriate for the claim that the Castros failed to provide essential services required under the Lease.

### C. Unable to Use the Premises for the Purpose Rented

The final grounds for breach of contract that Aiken asserts is that he was unable to use the Premises for the purpose he rented it for. Specifically, he was unable to store his personal property or create a parameter to house his two dogs. Pl. Pretrial Brief at 2.

Aiken claims that he was unable to store his personal property as a result of the Castros' continued use and possession of the Premises. Pl. Opp. No. 2 at 10. Aiken presents no evidence of the personal property that he sought to store or evidence of the Castros actually preventing him from doing so. Rather, he points to the photos from "Exhibit 1" and claims that the Castros' personal property prevented him from storing his. As explained in the preceding section addressing the Castros' delivery of the Premises, the photos depict permissible use by the Castros under the Lease. Without proof of what Aiken tried to store, where he tried to store it, and how the Castros' use of the property prevented him from using such storage, the evidence is not sufficient to support a claim that the Castros prevented Aiken from storing his personal property.

Regarding his dogs, Aiken argues that he was forced to keep the dogs in the carport area because of the Castros' continued use and possession of the backyard. Furthermore, he argues that a portion of the yard contained wastewater. Pl. Opp No. 2 at 10-11. Under Paragraph 13 Aiken was permitted to keep two twenty-pound outside dogs on the premises. Addendum No. 2 states that "Dogs must be kept on a leash and within confines of the property at all times and not inside the home." The terms of the lease indicate that Aiken was to keep his dog on a leash, not

that he was permitted to create an enclosure. Furthermore, Aiken admits that he was able to keep the dogs outside, albeit in the carport area.

For these reasons, as a matter of law, the evidence presented by Aiken regarding his ability to use the Premises for the purpose he rented it for, does not establish that the Castros breached the Lease.

## D. Remaining Claims for Damages

The Castros also challenge whether Aiken has presented sufficient evidence for several of Aiken's damages claims. Specifically, his claims for attorney fees, reimbursement for past rental payments and security deposit, and a claim to reimburse fees paid to repair a water leak.[6] For his claims of reimbursement of past rental payments and the security deposit, Aiken bases the claim on his allegation that the Castros breached the Lease by not delivering the property in its entirety. Since the Court finds a lack of evidence supporting Aiken's claim that the Castros breached that claim, the Court dismisses Aiken's claims for reimbursement of past rental payments and the security deposit.

### 1. Attorney's Fees

Paragraph 37 of the Lease states, "[i]n any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney fees and costs...." Since Aiken's claims that the Castros failed to provide essential services under the lease survives summary judgment, Aiken may still recover attorney fees if he succeeds at trial.

---

[6] As damages for an unlawful detainer action Aken sought reimbursement costs associated with relocating. See Addendum to Case Filed January 25, 2019 (Jul. 23, 2019). In CV0244-19, however, the Court found in favor of the Castros in their unlawful detainer action. Judgement. Since the unlawful detainer action is decided the reimbursement costs associated with relocating Aiken seeks is moot.

### 2. Claim to Reimburse Fees Paid to Repair Water Leak

In his Reply to Defendant's Opposition to Motion for Summary Judgment, Aiken claims that the Castros failed to cooperate with the notification and coordination requirements under the Lease and he incurred fees from the plumber as a result. Aiken provides the Court a copy of an invoice from "Plumbing Pros Guam" which Aiken claims represents the fee he was charged to repair a water leak; however, the contents of the invoice are illegible. Addendum to Case Filed January 25, 2019 (Jul. 23, 2019).

Under the Lease it is the tenant's obligation to make the Premises available for repairs and that twenty-four hours notice is required for entry to make the repairs. *See* Compl., Ex. 1 ¶ 19. In his response to the Castros' interrogatories, however, Aiken claims that he would have incurred fees whether he was home or not. Resp. to First Set of Interrogatories. Furthermore, Aiken provides no evidence regarding the nature of the leak and whether the Castros are responsible for the cost under the Lease. Given the lack of facts pleaded by Aiken on this claim the Court fails to find a connection between the damages sought and a breach of the Lease under Paragraph 19.

## IV. CONCLUSION

The Court GRANTS summary judgment in favor of the Castros on Aiken's claim that the Castros breached the Lease by failing to deliver the Premises in its entirety and for preventing Aiken from using the Premises for the purpose he rented it for. The Court DENIES summary judgement on Aikens claim that the Castros breached the contract by failing to provide essential services. This matter will proceed to trial on this sole remaining aspect of the breach of contract claim, the remaining claim of breach of the implied covenant of quiet enjoyment.[7]

---

[7] The issue of attorney's fees may be addressed on motion following the trial.

SO ORDERED this 16th day of February 2021.

_____
HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

SERVICE VIA E-M...
I acknowledge that an electron...
copy of the original was e-mailed to:
M. Aiken
M. Hemlani
Date:_____Time: 2/16/21
_____
Deputy Clerk, Superior Court of Guam

Appearing Parties:
Morgan Aiken, III, *pro se*
Minakshi V. Hemlani, Law Offices of Minakshi V. Hemlani, P.C., for Defendants Catherine M.R.
        Castro and Edward Castro